UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00599-RJC-DCK

| EKG SECURITY, INC., | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **Consent Injunction** |
| TAILORMADE PROTECTIVE SERVICES, LLC, and ROBERT G. STEFFMAN II, | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on E.K.G. Security, Inc.'s ("**EKG**") Verified Complaint (the "**COMPLAINT**") against Defendants Robert G. Steffman, II ("**STEFFMAN**") and TailorMade Protective Services, LLC ("**TAILORMADE**") (and together with Steffman, "**DEFENDANTS**") (Plaintiff and Defendants together, "**THE PARTIES**" and each individually a "**PARTY**") filed in this Court on November 5, 2021 and Plaintiff's Motion for Preliminary Injunction. To resolve the differences, disputes, and controversies among them and terminate their litigation, EKG and Steffman have agreed to resolve this matter through the Court's entry of the following Consent Injunction, Order, and Decree:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS COURT finds as follows for the limited purpose of entering this Consent Injunction, Order and Decree to resolve claims by EKG against Steffman:

1. On March 19, 2021, EKG and Steffman entered into the Commission Plan (the "**AGREEMENT**") attached to the Complaint as Exhibit A.

2. Steffman agreed to certain noncompetition, nonsolicitation, and nondisclosure provisions within the Agreement (the "**RESTRICTIVE COVENANTS**").

3. Specifically, pursuant to Section 2 of the Agreement, Steffman agreed as follows:

> <u>Confidentiality/Non-Solicitation</u>: During your employment and for a period of one (1) year from the date of termination of your employment for any reason you will not: (a) call upon any client of EKG for the purpose of selling to or soliciting such client whether on your own behalf or on the behalf of any person, firm, corporation other than EKG, any service similar to that provided by EKG; (b) divert or take away from EKG, divulge to any person, firm or corporation, the name of any clients or rates charged, wages paid, or any methods or systems or contract terms used by EKG or any other information which would be prejudicial and/or detrimental to the best interest of EKG; (c) except when acting for and in the best interest of EKG, divulge to any person, firm, or corporation, the names of any clients for any rates charged, wages paid, or any methods or systems or contract terms used by EKG or any other information which would be prejudicial and/or detrimental to the best interest of EKG; (d) engage directly or indirectly, or participate as a director, officer, employee, agent, representative, or otherwise as a stockholder, partner or joint venture or have any direct or indirect financial interest, including without limitations, the interest of a creditor in any form in any business which is any way directly or indirectly competitive with or similar to the business of EKG as it now exists or may then exist within a fifty (50) mile radius from the EKG office to which you are assigned or your home office; (e) receive any remuneration in any form from any business described in (d) above; (f) directly or indirectly disrupt or interfere with any existing business relationships between EKG and its client contacts, and (g) solicit or attempt to solicit or induce employees of EKG to leave its employ and work directly or indirectly for or with you. The restrictions will only apply to the geographic territory in which you were assigned during the last six months of your employment with E.K.G. Security, Inc.

(Exhibit A).

4. As outlined in Section 2, the Restrictive Covenants would only apply "to the geographic territory in which [Steffman] was assigned during the last six (6) months of [his] employment with EKG." (Ex. A § 2).

5. As likewise outlined in Section 2, the restrictions in the "Confidentiality/Non-Solicitation" provision applied "[d]uring [Defendant Steffman's] employment and for a period of one (1) year from the date of termination of [his] employment for any reason[.]" (Ex. A § 2).

6. The Agreement is governed by Georgia law.

7. Steffman's last day with EKG was July 19, 2021. He began working for TailorMade soon thereafter.

8. Steffman shared the Agreement containing the Restrictive Covenants with TailorMade prior to starting his employment.

9. EKG asserts, and Steffman does not contest, for the sole purpose of this Consent Injunction, that TailorMade directly competes with EKG in the business of providing certain services related to the provision of security services and personnel.

10. During his employment with EKG, Steffman procured a customer for EKG named Chateau Elan Resort & Winery. Following Steffman's departure and after he began working for TailorMade, EKG was alerted that Chateau Elan HOA was canceling its services contract with EKG. EKG later learned that Chateau Elan HOA entered into an agreement with TailorMade.

11. EKG also discovered that Steffman downloaded documents containing EKG confidential information and trade secrets to his personal computer, including but not limited to client lists, pricing and budget models, rates and wages, contract terms proposals, presentations, prospective client lists, client contacts, administrative practices, and operational methodologies.

12. Steffman breached his Agreement with EKG by downloading and retaining EKG confidential information and Trade Secrets for a period of time after his termination of employment with EKG and working for TailorMade, a competitor of EKG in the business development and sales of security services.

13. Steffman terminated his employment with TailorMade on November 19, 2021.

14. EKG and Steffman have agreed to enter into this stipulation for a consent order establishing the parties' Consent Injunction as per the terms set forth below. In recognition of the aforementioned contractual obligations and findings of fact,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Steffman is enjoined as follows:

1. Steffman stipulates and agrees that he will not use or rely upon any EKG data, including any trade secrets or Confidential Information.

2. EKG shall be permitted to have Steffman's computer searched for any of EKG's files and documents. In the event any are found, they shall be deleted under the supervision of counsel for EKG working in conjunction with Steffman and/or counsel for Steffman.

3. Steffman stipulates and agrees that he will not become employed by, or render service directly to, any business that competes with EKG as prohibited by the Agreement. Steffman further agrees that the restrictions contained in this Paragraph continue through July 19, 2022.

4. Steffman stipulates and agrees that he shall refrain from soliciting any customer or EKG employee in violation of the terms contained in the Agreement. Steffman further agrees that the restrictions contained in this Paragraph continue through July 19, 2022.

5. Steffman stipulates and agrees that he shall fully cooperate in the continuing litigation of this Action by appearing as required by any properly issued subpoena and testifying to the best of his ability.

6. This Consent Injunction does not affect EKG's rights to seek damages from TailorMade related to actions undertaken by TailorMade, and the Consent Injunction does not affect EKG's rights to seek enforcement of this Consent Injunction and its terms related to enforcement of the Agreement, and does not affect EKG's or Steffman's rights to enforce the separate Settlement and Release Agreement to be entered into by Steffman and EKG.

7. The Parties further consent and agree that this Court shall retain jurisdiction over the parties and this matter to the extent necessary to enforce the terms and conditions of this Stipulated Injunction and Decree.

**SO ORDERED**.

Signed: February 8, 2022

*[signature]*

Robert J. Conrad, Jr.
United States District Judge