UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00599-RJC-DCK

| EKG SECURITY, INC., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) |
| | ) **Order** |
| TAILORMADE PROTECTIVE SERVICES, LLC and ROBERT G. STEFFMAN II, | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendant Tailormade Protective Services, LLC's ("Tailormade") Motion to Dismiss for Failure to State a Claim (the "Motion"). (Doc. No. 10). For the reasons stated herein, the Motion is **DENIED**.

I. BACKGROUND

A. Factual Background

Accepting the factual allegations in the Complaint as true, Plaintiff is in the highly competitive business of providing security services and personnel to residential and commercial customers in Georgia and North Carolina. (Doc. No. 1 ¶¶ 7-8). On March 19, 2021, Plaintiff hired Defendant Robert G. Steffman II ("Steffman") as its Vice President of Business Development. (*Id.* ¶ 14). In this position, Steffman worked from his home located in Concord, North Carolina. (*Id.* ¶ 15). On the same day, Steffman signed an agreement titled "Commission Plan," with several restrictive covenants (the "Agreement"), as follows:

> 2. <u>Confidentiality/Non-Solicitation</u>: During your employment and for a period of one (1) year from the date of termination of your employment for any reason you will not: (a) call upon any client of EKG for the purpose of selling to or soliciting such client whether on your own behalf or on the behalf of any person, firm, corporation other than EKG, any service similar to that provided by EKG; (b) divert or take away from EKG, divulge to any person, firm or corporation, the name of any clients or rates charged, wages paid, or any methods or systems or contract terms used by EKG or any other information which would be prejudicial and/or detrimental to the best interest of EKG; (c) except when acting for and in the best interest of EKG, divulge to any person, firm, or corporation, the names of any clients or any rates charged, wages paid, or any methods or systems or contract terms used by EKG or any other information which would be prejudicial and/or detrimental to the best interest of EKG; (d) engage directly or indirectly, or participate as a director, officer, employee, agent, representative, or otherwise as a stockholder, partner or joint venture or have any direct or indirect financial interest, including without limitation, the interest of a creditor in any form in any business which is in any way directly or indirectly competitive with or similar to the business of EKG as it now exists or may then exist within a fifty (50) mile radius from the EKG office to which you are assigned or your home office; (e) receive any remuneration in any form from any business described in (d) above; (f) directly or indirectly disrupt or interfere with any existing business relationships between EKG and its client contacts, and (g) solicit or attempt to solicit or induce employees of EKG to leave its employ and work directly or indirectly for or with you. These restrictions will only apply to the geographic territory in which you were assigned during the last six (6) months of your employment with E.K.G. Security, Inc.

(*Id.* ¶¶ 16-20; Doc. No. 1-1 ¶ 2). On its face, the Agreement does not contain a choice-of-law provision, but Plaintiff asserts it is governed by Georgia law. (Doc. No. 1 ¶ 21; Doc. No. 1-1).

On July 19, 2021, Plaintiff terminated Steffman. (Doc. No. 1 ¶ 24). In the weeks leading up to Steffman's termination, he accessed and downloaded large quantities of Plaintiff's confidential and proprietary information, including numerous documents related to client relationships. (*Id.* ¶¶ 26-27). Following his termination, Steffman tried soliciting multiple of Plaintiff's employees to leave. (*Id.* ¶¶ 25, 33). Additionally, Steffman intentionally altered and removed data from Plaintiff's social media accounts. (*Id.* ¶¶ 41-43).

Thereafter, Steffman began working for Defendant Tailormade. (*Id.* ¶ 29). Tailormade similarly specializes in security and protected services, and is located 35 miles from Steffman's home in Charlotte, North Carolina. (*Id.* ¶¶ 30-31). Steffman provided the same or substantially similar services in his role at Tailormade. (*Id.* ¶ 32). On July 20, 2021, Plaintiff notified Steffman that he breached the Agreement and demanded that he comply with the restrictive covenants contained therein. (*Id.* ¶¶ 35-36). On September 3, 2021, Plaintiff notified Tailormade of the Agreement, Steffman's breach of the Agreement, and "requested that Tailormade take all steps necessary to remedy the breaches." (*Id.* ¶ 37). Neither Steffman nor Tailormade responded. (*Id.* ¶ 38). At the time the Complaint was filed, Tailormade continued to employ Steffman. (*Id.* ¶ 40).

On October 1, 2021, Plaintiff's client Chateau Elan Services Management ("Chateau Elan") notified Plaintiff that it was terminating its contract with Plaintiff. (*Id.* ¶ 44). Plaintiff later learned that Tailormade began providing security services to Chateau Elan. (*Id.* ¶ 46). Plaintiff alleges that Steffman used its confidential information and trade secrets to persuade Chateau Elan to terminate its security services contract with Plaintiff and contract for its security services with Tailormade. (*Id.* ¶¶ 49-50).

### B. Procedural Background

On November 5, 2021, Plaintiffs filed this action against Steffman and Tailormade. Plaintiff brings the following claims against Steffman: (1) violation of the Defend Trade Secrets Act; (2) violation of the North Carolina Trade Secrets Protection Act; (3) breach of contract; (4) tortious interference with contract; (5) violation of North Carolina's Unfair and Deceptive Trade Practices Act; (6) violation of North Carolina's Computer Trespass statute; and (7) injunctive

3

relief. Plaintiff and Steffman consented to an injunction largely consistent with the Agreement.[1] (Doc. No. 17; Doc. No. 19). Thereafter, Plaintiff agreed to dismiss Steffman from this action. (Doc. No. 20). Plaintiff's Complaint also brings a tortious interference with contract claim against Tailormade, which Tailormade asks the Court to dismiss.

## II. STANDARD OF REVIEW

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint.

---

[1] Plaintiff and Steffman agreed for purposes of the consent injunction only that the Agreement is governed by Georgia law. (Doc. No. 17 ¶ 6; Doc. No. 19 ¶ 6).

*Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Plaintiff's sole claim against Tailormade is a tortious interference with contract claim, asserting that Tailormade tortiously interfered with the Agreement between Plaintiff and Steffman. (Doc. No. 1 ¶¶ 109-115).

"A federal court exercising diversity jurisdiction applies the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004). For claims rooted in tort, such as a tortious interference claim, North Carolina applies "the law of the situs of the claim" meaning "the state where the injury occurred . . . ." *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988). Tailormade's alleged tortious interference with the Agreement between Plaintiff and Steffman occurred in North Carolina; therefore, North Carolina law applies to Plaintiff's tortious interference claim against Tailormade. Under North Carolina law, a claim for tortious interference requires:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

5

*Wells Fargo Ins. Srvs., USA, Inc. v. Link*, 827 S.E.2d 458, 475 (N.C. 2019).

Tailormade largely disputes the first element, arguing the Agreement's restrictive covenants are unenforceable under North Carolina law. Plaintiff disputes that North Carolina law applies to the Agreement; rather, it claims Georgia law applies, and under Georgia law, Plaintiff asserts the restrictive covenants are enforceable.

For contract construction and interpretation questions, when the parties to a contract agreed that a given jurisdiction's substantive law will govern, then North Carolina courts will typically give effect to that provision. *Bueltel v. Lumber Mut. Ins. Co.*, 518 S.E.2d 205, 209 (N.C. Ct. App. 1999). However, a contract without a choice-of-law provision is governed by the law of the state where the contract was made. *Walden v. Vaughn*, 579 S.E.2d 475, 510 (N.C. Ct. App. 2003). For choice-of-law purposes, a contract was made "in the place where the last act necessary to make it binding occurred." *Century Data Sys., Inc. v. McDonald*, 428 S.E.2d 190, 193–94 (N.C. Ct. App. 1993) (citations omitted). "For written contracts, the last act essential to the formation of the contract is the affixation of the final signature." *Wall v. Automoney, Inc.*, 877 S.E.2d ---, 2022 WL 2812819, at *11 (N.C. Ct. App. 2022) (citing *Szymczyk v. Signs Now Corp.*, 606 S.E.2d 728, 733 (N.C. Ct. App. 2005)).

Here, the Agreement does not contain a choice-of-law provision; therefore, the Court must apply the law of the place "where the last act necessary to make" the Agreement binding occurred. Tailormade argues that the last act necessary to make the Agreement binding occurred in North Carolina. To support this position, Tailormade relies on an affidavit from Tailormade's President/CEO Donald Million and Steffman's employment agreement with Plaintiff, which is addressed to Steffman's North Carolina address. According to the Million Affidavit, Steffman told Million that he received the employment agreement and the Agreement at his home in North

6

Carolina, with Plaintiff's signature already on each, and Steffman signed them in North Carolina. (Doc. No. 10-2). However, as Plaintiff correctly asserts, the Court cannot consider the Million Affidavit for purposes of a Rule 12(b)(6) motion to dismiss.[2] *Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) ("[I]n resolving a motion pursuant to Rule 12(b)(6) or Rule 12(c), a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment . . . [except documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic."). The Million Affidavit is not integral to Plaintiff's Complaint, and at most, without agreement from Plaintiff as to its contents, creates questions of fact, as to the information contained therein. Without more, the record does not yet sufficiently reflect the location at which the Agreement was executed, nor does it provide a definitive alternative explanation and location for any other "last act necessary." Consequently this Court is unable to determine on the current record the location of the last act necessary to make the Agreement binding, and is therefore, at this motion to dismiss stage, unable to determine the law that governs the Agreement. *See Hill-Rom Servs., Inc. v. Verses Tech., Inc.*, No. 1:03CV1227, 2006 WL 1540851, at *11 (M.D.N.C. June 2, 2006) ("[T]he record fails to provide any more information as to where the last act essential to a meeting of the minds took place by any of the parties. . . . [N]either signature contains any accompanying date, time, or location. Without such information, it is not possible to determine where the contract was 'formed' under North Carolina's

---

[2] Tailormade argues the employment agreement attached to Million's Affidavit is integral to the Complaint; however, even assuming for purposes of this Motion that the employment agreement is integral to the Complaint such that the Court may consider it, the employment agreement itself does not demonstrate that the last act necessary occurred in North Carolina. While the employment agreement is addressed to Steffman at his North Carolina residence, it is a separate document from the Agreement, it does not state the place it was signed, does not definitely demonstrate that Steffman signed it or the Agreement after Plaintiff already signed, and does not demonstrate that Steffman signed either agreement in North Carolina.

7

Case 3:21-cv-00599-RJC-DCK   Document 22   Filed 09/26/22   Page 7 of 9

choice-of-law rules"). Under such circumstances "[t]his question, which hangs on choice-of-law analysis, is more appropriately addressed after discovery." *Morris v. Bank of Am., N.A.*, No. 318CV00157RJCDSC, 2019 WL 1421166, at *3 (W.D.N.C. Mar. 29, 2019). Accordingly, at this stage, it is more appropriate to wait for a more fully developed record before determining which state's law applies to the Agreement. *See Speedway LLC v. William Properties, II, LLC*, No. 3:20-cv-45-RJC-DCK, 2021 WL 1394855, at *4-5 (W.D.N.C. Apr. 13, 2021); *Beritelli v. Wells Fargo Bank, N.A.*, No. 1:11-CV-000179-MR, 2013 WL 5460179, at *13 (W.D.N.C. Sept. 30, 2013) ("The parties may revisit the choice of law issue at the summary judgment stage, at which time the Court will be in a better position to determine which state law is applicable."); *Clean Earth of Md., Inc. v. Total Safety, Inc.*, No. 2:10-cv-119, 2011 WL 1627995, at *4 (N.D. W. Va. Apr. 28, 2011) ("Importantly, a court is typically in a better position to decide a choice of law issue after the parties have developed the factual evidence through the process of discovery"). The Agreement may be enforceable under one or both state's laws; therefore, Plaintiff's Complaint sufficiently states a valid contract for purposes of its tortious interference claim.[3]

Tailormade also argues Steffman did not breach the Agreement's restrictive covenants because Chateau Elan is located in Braselton, Georgia, outside of Steffman's assigned geographic area, and as such Tailormade did not tortiously interfere with the Agreement. Tailormade's argument does not address whether Steffman breached the Agreement's non-compete provision, but rather focuses on the Chateau Elan relationship. However, the thrust of Plaintiff's claim against Tailormade relates to the Agreement's non-compete provision, which prohibits Steffman from working for a competitor within a fifty mile radius of Steffman's home office for one year.

---

[3] Tailormade's Motion does not argue that the Agreement's non-compete provisions are unenforceable under Georgia law. Instead, it analyzes only North Carolina law.

Here, the Complaint sufficientlypleads facts to support this alleged breach, specifically that Tailormade, Plaintiff's competitor located within fifty miles of Steffman's home office, intentionally induced Steffman to work for Tailormade and then continued to employ him despite knowledge of the non-compete provision. Therefore, Plaintiff's Complaint sufficiently alleges a breach of a valid agreement for purposes its tortious interference claim against Tailormade.

Tailormade does not otherwise dispute that Plaintiff's Complaint sufficiently pleads the remaining elements of the tortious interference claim. Accordingly, Tailormade's Motion to Dismiss is denied.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Defendant Tailormade Protective Services, LLC's Motion to Dismiss for Failure to State a Claim (Doc. No. 10) is **DENIED**.

Signed: September 26, 2022

Robert J. Conrad, Jr.
United States District Judge